IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JOAN EILEEN HAYES,                          3:11-CV-481-BR

            Plaintiff,                      OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

            Defendant.


SHARON D. MAYNARD
Bennett, Hartman, Morris & Kaplan, LLP
210 S.W. Morrison Street, Suite 500
Portland, OR 97204
(503) 227-4600

            Attorneys for Plaintiff

1 - OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**WILLY M. LE**
Special Assistants United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2531

          Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Joan Eileen Hayes seeks judicial review of a final decision of the Commissioner of the Social Security Admini-stration (SSA) in which he denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act respectively.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff filed her applications for SSI and DIB on May 13, 2005, and alleged a disability onset date of October 1, 1999. Tr. 127-135.[1] The applications were denied initially and on reconsideration. Tr. 94-97, 99-107, 112-17. An Administrative Law Judge (ALJ) held a hearing on January 30, 2009, at which Plaintiff amended her alleged onset date to January 1, 2006. Tr. 34-74. At the hearing, Plaintiff was represented by an attorney. Tr. 34. Plaintiff and a Vocational Expert (VE) testified. Tr. 43-73.

The ALJ issued a decision on February 24, 2009, in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 30-33. Pursuant to 20 C.F.R. § 404.984(d), the ALJ's decision became the final decision of the Commissioner on February 22, 2011, when, after providing Plaintiff additional time to supplement the record, the Appeals Council denied Plaintiff's request for review. Tr. 1-3, 7-10, 13-14.

## BACKGROUND

Plaintiff was 63 years old at the time of the hearing before the ALJ. Tr. 34, 97. Plaintiff has a Bachelors Degree and a Masters Degree. Tr. 313. She has past relevant work experience

---

[1] Citations to the official transcript of record filed by the Commissioner on August 15, 2011, are referred to as "Tr."

as a mental-health counselor.  Tr. 67-68.

Plaintiff has been diagnosed with fibromyalgia; severe osteoarthritis and degenerative joint disease in both knees; multilevel degenerative disc disease of her cervical spine with moderate-to-severe neuroforaminal narrowing at C3-C4, mild neuroforaminal narrowing at C4-C5, and moderate neuroforaminal narrowing at C5-C6; migraine headaches; obesity; chronic fatigue; hypothyroidism; and gastroesophageal reflux disease (GERD). Tr. 521, 525, 552-53, 556-58, 565, 571-72, 583, 608, 624.

Plaintiff has also been diagnosed with depression, bipolar disorder, adjustment disorder, and Post-Traumatic Stress Disorder (PTSD).  Tr. 317, 521, 586-88, 594, 616, 619.

Plaintiff alleges disability due to pain in her back, neck, and knees; fatigue; depression; and obesity.  Tr. 148, 197, 206. Plaintiff asserts her impairments limit her ability to sit, to stand, to walk, to lift, to carry, to bend, to squat, to kneel, to climb stairs, to see, to hear, to remember, to concentrate, to understand and to follow instructions, to complete tasks, and to get along with others.  Tr. 57-62, 148, 185, 197.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 22-32.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

<u>**DISABILITY ANALYSIS**</u>

**I.    The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at

6 - OPINION AND ORDER

1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An

improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since her January 1, 2006, amended alleged onset date.  Tr. 22.

8 - OPINION AND ORDER

At Step Two, the ALJ found Plaintiff has the severe impairments of "osteoarthritis, obesity, and degenerative joint disease of the knee."  Tr. 22.

At Step Three, the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 27.  The ALJ also found Plaintiff has the RFC to perform the full range of light-exertion work "with some occasional postural nonexertional limitations."  Tr. 27.  Specifically, the ALJ concluded Plaintiff

> can lift and carry 20 pounds frequently.  She is unlimited in her capacity to sit in an 8-hour workday with normal breaks.  She can stand and walk for up to 4-hours in each activity (cumulatively, not continuously) in an 8-hour workday with normal breaks.  Her push/pull exertional capacities, in her upper and lower extremities, are unlimited to the weight levels she can lift-and-carry, as set forth above.

> The claimant's postural nonexertional limitations are that she can occasionally climb stairs and equivalent ramps, but she is precluded from climbing ropes, ladders and scaffolding.  She can also do occasional bending, stooping, kneeling, crouching and crawling.

Tr. 32.

At Step Four, the ALJ concluded Plaintiff is capable of performing her past relevant work as a mental-health counselor. Tr. 32-33.  Thus, the ALJ concluded at Step Four that Plaintiff is not disabled and, therefore, is not entitled to benefits.

9 - OPINION AND ORDER

Tr. 33.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) improperly assessed Plaintiff's RFC by failing to consider medical records from 2006 to 2009, including the opinions of Plaintiff's treating and examining physicians during that time, and (2) improperly discredited Plaintiff's testimony.

**I.    Plaintiff's RFC.**

Plaintiff contends the ALJ erred in her assessment of Plaintiff's RFC because she failed to properly account for the opinions of three of Plaintiff's treating and examining physicians and the associated diagnostic tests on which those physicians relied.  Specifically, Plaintiff notes the ALJ heavily relied on evidence in the record from 2005 prior to Plaintiff's alleged onset date of January 1, 2006, including x-rays of Plaintiff's spine and knees and the opinion of Scott Bleazard, M.D., rather than on the evidence from 2006 through 2009.  *See* Tr. 25-27, 239-43.  In addition, Plaintiff contends the ALJ ignored relevant mental limitations set out in the October 22, 2008, opinion of Gary Sacks, Ph.D.

In her analysis of the record with respect to Plaintiff's ability to perform work-related functions, the ALJ concluded:

> Although the claimant alleges a litany of
> medical impairments, both mental and

10 - OPINION AND ORDER

physical, the medical evidence of record does
not really support any of her self-reported
impairments.  Detailed review of the medical
evidence of record reflects the claimant has
subjectively reported medical diagnoses
history for fibromyalgia, irritable bowel
syndrome, arthritis, asthma, insomnia,
allergies, GERD, restless leg syndrome, back
pain, arthritis in both knees,
hypothyroidism, posttraumatic stress
disorder, depression, bipolar disorder,
avoidant personality disorder and obesity.
All of the claimant's alleged impairments are
reported by the claimant as "dating back to
her late twenties." . . . . She alleged that
her back pain dates back to when she was 12-
year-old.  She alleged bilateral knee pain
"dating back to the 1980s, with recom-
mendation for bilateral knee replacement."
However, there are no medical records from
any treating or examining source recommending
surgery for bilateral knee replacement.

* * *

So far, review of the record reflects
the claimant has *no* objective medical
evidence to establish diagnoses for *any* of
her alleged impairments.

Tr. 30-31 (emphasis added).

In reaching these conclusions and assessing Plaintiff's RFC,
Plaintiff contends the ALJ ignored significant medical evidence
in the record from 2006 through 2009 that, in fact, establishes
Plaintiff's physical and mental impairments.

**A.    Evidence of Physical Impairments.**

Plaintiff contends the ALJ erroneously ignored substantial
evidence in the record that establishes Plaintiff's significant
physical impairments, including:  (1) the opinion of Howard

Gandler, M.D., from his April 2007 examinations of Plaintiff;
(2) the April 10, 2007, x-ray of Plaintiff's knee; (3) the
opinion of Robert Earl, M.D., from his June 2007 treatment of
Plaintiff; and (4) the 2009 surgical records related to
Plaintiff's total left-knee replacement surgery.  Accordingly,
Plaintiff contends the ALJ's assessment of Plaintiff's RFC does
not properly contain all of Plaintiff's physical limitations.

    Dr. Gandler, a rheumatologist, examined Plaintiff twice in
April 2007 on a referral by Plaintiff's treating Nurse
Practitioner, Donna Hammar.  Tr. 552-53, 556-62.  Dr. Gandler
noted diffuse pain in Plaintiff's knees, reduced range of motion
in Plaintiff's cervical spine, and right-shoulder and upper arm
pain.  Tr. 557.  Based on his evaluation and on x-rays he
requested and reviewed, Dr. Gandler diagnosed Plaintiff with
fibromyalgia (chronic myofascial pain) and osteoarthritis (in her
neck and severe in her knees) resulting in musculoskeletal and
nonmusculoskeletal pain.  Tr. 552.  The April 10, 2007, x-ray of
Plaintiff's left knee relied on by Dr. Gandler showed "profound
degenerative changes" with "significant osteophytosis,
significant remodeling of the undersurface of the patella, and
extensive bony sclerosis."  Tr. 565.  The January 23, 2007, x-ray
of Plaintiff's right knee, which Dr. Gandler concluded was
similar to the left-knee x-ray, revealed "severe right knee
tricompartmental degenerative joint disease."  Tr. 451-52.

12 - OPINION AND ORDER

Dr. Earl treated Plaintiff's knee pain with corticosteroid injections in both knees on June 6, 2007.  Tr. 580-84.  On the basis of his examination and his review of the diagnostic images, Dr. Earl diagnosed Plaintiff with degenerative joint disease and bilateral osteoarthritis in her knees.  Tr. 582-83.  Dr. Earl's treatment notes reflect he discussed knee-replacement surgery with Plaintiff.  Tr. 583.

Indeed, the record also reflects Plaintiff underwent a total left-knee replacement in May 2009.  Tr. 646-54.  The findings by surgeon David L. Noall, M.D., reflect a "[s]evere loss of cartilage in the patellafemoral joint with erosion of the patella.  All cartilage was missing, particularly over the lateral femoral condyle."  Tr. 648.

The ALJ did not expressly discuss any of this evidence in her assessment of Plaintiff's RFC.  Although the ALJ stated she performed a "detailed review of the medical evidence," as reflected in the ALJ's conclusion that Plaintiff "has no objective medical evidence to establish diagnoses for any of her alleged impairments," it is clear the ALJ did not consider these records when determining Plaintiff's RFC.  *See* Tr. 30-31. Despite the ALJ's conclusion to the contrary, the medical records from 2007 to 2009 discussed above as well as the treatment notes by Plaintiff's treating physician, Rachel Solotaroff, M.D., reflect Plaintiff has provided objective medical evidence and

diagnoses from and treatment by acceptable medical sources for her fibromyalgia, arthritis in her neck and knees, GERD, hypothyroidism, neck and back pain, and obesity.  Tr. 451, 521, 525, 528, 530, 552-53, 556-58, 565, 571-72, 582-84, 608, 646-48. Thus, the ALJ's conclusion to the contrary is erroneous. Furthermore, the ALJ "must *always* consider and address medical source opinions" when assessing a claimant's RFC, and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, at *7 (emphasis added).  The ALJ, therefore, cannot simply ignore the opinions of Drs. Gandler, Earl, and Solataroff and the objective medical evidence on which they relied when assessing Plaintiff's RFC.  *Smolen*, 80 F.3d at 1286 (ALJ's disregard of medical opinions and contrary conclusions constituted a rejection of those opinions, and the ALJ's failure to offer reasons for doing so was reversible error).

**B.   Evidence of Mental Impairments.**

Plaintiff similarly contends the ALJ erred when she concluded the record does not contain evidence of Plaintiff's mental impairments such as PTSD, depression, and bipolar disorder.  The Court finds that conclusion is also erroneous because the record, in fact, contains opinions by acceptable medical sources based on objective tests in which they diagnose Plaintiff with and treat her for PTSD, depression, adjustment

14 - OPINION AND ORDER

disorder, and bipolar disorder.  Tr. 317, 516, 586-88, 594, 616, 619, 627-28.  The record is also replete with similar diagnoses and treatment records by nurse practitioners, naturopathic doctors, mental-health practitioners, and licensed clinical social workers who treated Plaintiff regularly for her mental impairments from 2006 through 2009.  *See* Tr. 457-549, 608-29. Again, the ALJ cannot ignore such opinions and reach contrary conclusions without explaining her basis for doing so.  *See Smolen*, 80 F.3d at 1286.

Plaintiff also contends the ALJ erroneously excluded from Plaintiff's RFC the mental limitations set out by Dr. Sacks in his October 22, 2008, examination of Plaintiff.  Tr. 312-21. Specifically, Plaintiff points to Dr. Sacks's assessment of Plaintiff's "mild" limitations on her ability to understand, to remember, and to carry out complex instructions; to interact appropriately with the public, co-workers, and supervisors; and to respond appropriately to changes in a routine work setting. *See* Tr. 319-20.  "Mild" limitations are defined on the form submitted by Dr. Sacks as reflecting "a slight limitation . . . but the individual can generally function well."  Tr. 320.

With respect to Dr. Sacks's examination, however, the ALJ summarized Dr. Sacks's neuropsychological findings and gave his opinion "significant weight."  Tr. 24-25.  The ALJ noted Dr. Sacks's assessment of mild limitations and pointed out that

15 - OPINION AND ORDER

despite those limitations, Dr. Sacks concluded Plaintiff has the aptitude and intellect "necessary to work in a variety of jobs" (Tr. 24, 316) and Plaintiff "appears capable of working in a variety of settings." Tr. 25, 318. In addition, the ALJ noted Dr. Sacks's conclusion that Plaintiff's clinical profile was "un-interpretable" due to Plaintiff's tendency to exaggerate and her "extreme over-reporting" of symptoms. Tr. 24-25, 317. With respect to Dr. Sacks, therefore, the Court concludes the ALJ provided legally sufficient reasons for concluding the mental limitations set out by Dr. Sacks were no more than slight limitations on Plaintiff's ability to perform work-related functions. Thus, the Court finds this is not a basis to conclude the ALJ's assessment of Plaintiff's RFC was erroneous.

In summary, the Court concludes the ALJ erred when assessing Plaintiff's RFC by failing to properly consider substantial evidence in the record from Plaintiff's treating and examining physicians and the objective medical evidence on which they relied.

## II. Plaintiff's testimony.

Plaintiff also contends the ALJ erred when she improperly rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence

16 - OPINION AND ORDER

of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ gave numerous bases throughout her decision to support her conclusion that Plaintiff "is not entirely credible." Tr. 23-25, 30-32. Among those reasons, the Court finds there are clear and convincing bases to support the ALJ's decision to discredit Plaintiff's testimony. In particular, the ALJ relied on the statements of several of Plaintiff's treating and examining physicians concerning Plaintiff's tendency to exaggerate and to overstate her symptoms and to answer questions evasively in order to emphasize her perceived disability. *See,*

17 - OPINION AND ORDER

*e.g.*, Tr. 244-49 (psychodiagnostic examination by Duane D. Kolilis, Ph.D., in which he concludes Plaintiff was evasive with responses, made inconsistent statements, and gave less than optimal effort); Tr. 305 (treating Mental Health Nurse Practitioner, Jean Akin, noted Plaintiff's tendency to "lie" or not to tell the whole truth in order to manipulate others); Tr. 312-19 (Dr. Sacks noted Plaintiff's scores on her Minnesota Multiphasic Personality Inventory II indicated "extreme over-reporting and exaggeration of symptomology").

These are legally sufficient bases to discredit a claimant's subjective-symptom testimony. *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)(tendency to exaggerate, inconsistent statements, and lack of cooperation during consulting examinations sufficient grounds to discredit the plaintiff's testimony). Indeed, Plaintiff concedes the ALJ gave legally sufficient reasons to discredit Plaintiff's subjective-symptom testimony as to the extent of her mental-health impairments.

The Court, however, notes in the ALJ's assessment of Plaintiff's credibility, the ALJ relied heavily on what she perceived to be Plaintiff's tendency to self-diagnose or, essentially, to state that she has impairments for which she has not been diagnosed by a medical professional. Tr. 22-23, 30-32. The ALJ particularly cited two bases for reaching this

18 - OPINION AND ORDER

conclusion: (1) Plaintiff cited impairments from her distant past that were not supported by the record and (2) Plaintiff did not provide any objective evidence of her physical and mental impairments. Tr. 30. Neither of these bases, however, is supported by the record. As the Court has already discussed, Plaintiff provided substantial evidence to support the diagnoses of her numerous physical and mental impairments, and the ALJ's contrary conclusion was in error. In addition, the ALJ's assertion that Plaintiff lacks credibility because she did not provide medical evidence related to the period before her alleged onset date to support the diagnoses that Plaintiff contends were made in those years is untenable. The fact that this record does not contain medical records related to the period before Plaintiff's alleged onset date does not give rise to an inference that she is not telling the truth about her prior diagnoses any more than it gives rise to an inference that she is accurately describing her medical history. Thus, the ALJ's reasoning is not supported by substantial evidence in the record.

Nonetheless, the Court need not reverse an ALJ's credibility determination that contains errors if the ultimate credibility determination remains valid. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). *In Carmickle*, the Ninth Circuit held:

> Because we conclude that two of the
> ALJ's reasons supporting his adverse

credibility finding are invalid, we must
determine whether the ALJ's reliance on such
reasons was harmless error. *See Batson v.
Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,
1195-97 (9th Cir. 2004)(applying harmless
error standard where one of the ALJ's several
reasons supporting an adverse credibility
finding was held invalid). Our decision in
*Batson* makes clear that reviewing the ALJ's
credibility determination where the ALJ
provides specific reasons supporting such is
a substantive analysis. So long as there
remains "substantial evidence supporting the
ALJ's conclusions on . . . credibility" and
the error "does not negate the validity of
the ALJ's ultimate [credibility] conclusion,"
such is deemed harmless and does not warrant
reversal. *Id*. at 1197; *see also Stout*, 454
F.3d at 1055 (defining harmless error as such
error that is "inconsequential to the
ultimate nondisability determination").

Contrary to the dissent's assertion, the
relevant inquiry in this context is not
whether the ALJ would have made a different
decision absent any error, *see* Dissent at
1168, it is whether the ALJ's decision
remains legally valid, despite such error.
In *Batson*, we concluded that the ALJ erred in
relying on one of several reasons in support
of an adverse credibility determination, but
that such error did not affect the ALJ's
decision, and therefore was harmless, because
the ALJ's remaining reasoning and ultimate
credibility determination were adequately
supported by substantial evidence in the
record. 359 F.3d at 1197. We never
considered what the ALJ would do if directed
to reassess credibility on remand-we focused
on whether the error impacted the validity of
the ALJ's decision. *Id*. Likewise, in *Stout*,
after surveying our precedent applying
harmless error in social security cases, we
concluded that "in each case, the ALJ's error
. . . was inconsequential to the ultimate
nondisability determination." 454 F.3d at
1055 (emphasis added).

20 - OPINION AND ORDER

*Id.*

On this record, it is impossible to conclude that the ALJ's error was harmless.  The ALJ's extensive reliance on Plaintiff's purported self-diagnoses and on a complete lack of evidence to support such diagnoses reflects the significant impact that conclusion had on the ALJ's credibility determination.  Indeed, there is a vast difference between the credibility of a claimant who alleges a number of physical and mental impairments without "objective medical evidence to establish diagnoses for *any* of her alleged impairments" and one who presents objective evidence and the treatment notes of acceptable medical sources to support her diagnoses.  *See* Tr. 30.  The conclusion, for example, that the record supports Plaintiff's mental impairment of bipolar disorder might lead an ALJ to determine that Plaintiff's mental impairment contributes to her exaggeration during examination or to her inconsistent statements.  As Dr. Sacks noted, the fact that Plaintiff may exaggerate her symptoms to emphasize her suffering does not necessarily mean Plaintiff is not "experiencing significant distress."  Tr. 317.

In the end the ALJ's general conclusion that Plaintiff is "not entirely credible" does not provide the Court with any basis to assess which testimony the ALJ concluded was undermined as a result of the proper bases the ALJ offered to discredit Plaintiff and which testimony was discredited on improper bases.

21 - OPINION AND ORDER

Accordingly, the Court concludes the ALJ's error negates the validity of the ALJ's ultimate credibility determination and, therefore, is not harmless error.  *See id.*

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*  The second and third prongs of the test often merge into a

22 - OPINION AND ORDER

single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are necessary.  It is not clear on this record whether the ALJ would have found Plaintiff could not perform her past relevant work if she had credited the opinions of any of Plaintiff's treating or examining physicians that were not addressed in her decision. Plaintiff contends her testimony concerning her diminished ability to concentrate should be credited and, when such testimony is credited, Plaintiff should be deemed to be disabled in light of the VE's testimony that a 5-10% reduction in concentration would preclude Plaintiff from her past relevant work.  Nevertheless, the record does not conclusively establish Plaintiff's level of impaired concentration even if her testimony were credited.

The Court concludes a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ (1) to consider the medical records from 2006 to 2009, (2) to reassess Plaintiff's RFC and credibility in light of those records, and (3) to elicit further testimony from the VE to determine whether Plaintiff can perform her past relevant work.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the

23 - OPINION AND ORDER

Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 17th day of April, 2012.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge